UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>NIMARTA GREWAL, et al.,<br><br>    Defendants. | Case No. 24-cv-05344-JSC<br><br>**ORDER RE: MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

The California Teaching Commission ("CTC") revoked Plaintiff Jane Doe's teaching credentials.[1]  Ms. Doe filed suit against Marquita Grenot-Scheyer, the Chair of the CTC, alleging she did not receive proper notice prior to the revocation.  (Dkt. No. 1.)  Pending before the Court is Ms. Doe's motion for a preliminary injunction.  (Dkt. No. 10.)  After carefully considering the parties' submissions, and having had the benefit of oral argument on November 14, 2024, the Court GRANTS Ms. Doe's motion for a preliminary injunction.

I.  **COMPLAINT ALLEGATIONS**

Ms. Doe taught at Pleasanton Unified School District ("School District").  (Dkt. No. 1 ¶ 1.)[2]  On December 20, 2022, during a class party for students, "[a] male student got carried away and sat in Ms. Doe's chair by her desk."  (*Id.* ¶¶ 11, 13.)  "Ms. Doe joked with the student that if he did not move from her seat, she would sit on him."  (*Id.* ¶ 14.)  "As part of the joke, she gestured to sit on him."  (*Id.* ¶ 14.)  The students laughed, and a female student took a picture.  (*Id.* ¶¶ 15-16.)  "At no point did Ms. Doe actually sit on the male student."  (*Id.* ¶ 18.)

---

[1] The Court granted Ms. Doe's request to proceed under a pseudonym.  (Dkt. No. 22.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    Several weeks later, a student reported to school administrators that Ms. Doe sat on the male student. (*Id.* ¶ 11.) On January 20, 2023, administrators met with Ms. Doe about the report and told her "we believe you." (*Id.* ¶¶ 22-23.) "The school closed the January 2023 investigation and did not take disciplinary action." (*Id.* ¶ 25.) About a week after her meeting with administrators, "Ms. Doe submitted her notice of retirement, effective at the end of the school year." (*Id.* ¶ 28.) One reason she retired "was to finish her doctorate and pursue a full time faculty position in teacher education." (*Id.* ¶ 29.)

Several months later, in May 2023, the male student, through counsel, served a demand letter on the school district to "'settle' the supposed sexual harassment claim." (*Id.* ¶ 31.) The School District placed Ms. Doe on administrative leave "pending an investigation into allegations of sexual harassment." (*Id.* ¶ 31.) While on administrative leave, Ms. Doe was notified the male student filed a formal Title IX complaint against her. (*Id.* ¶ 33.) The School District did not investigate the complaint. (*Id.* ¶ 34.) Ms. Doe retired as planned in June 2023. (*Id.* ¶ 34.)

After Ms. Doe retired, the School District sent a letter to the CTC, "a state government entity responsible for the credentialing or licensure of the State's teachers." (*Id.* ¶¶ 3, 35.") The letter stated Ms. Doe "resigned pending an allegation of misconduct." (*Id.* ¶ 35.)

On October 5, 2023, the School District opened a new investigation. (*Id.* ¶ 53.) Ms. Doe participated in the investigation, which lasted approximately three months. (*Id.* ¶ 62.) "[T]he investigators found Ms. Doe was not responsible for any sexual harassment charge," although there was "a finding that Ms. Doe violated a vague 'Professional Standards' policy, Board Policy ('BP') 4119.2." (*Id.* ¶ 63-64.)

On July 28, 2024, the CTC—"rel[ying] on the false statement that . . . Ms. Doe resigned from the District, pending allegations of misconduct that she engaged in grooming behavior with an 8th grade student"—revoked her teaching credentials. (*Id.* ¶¶ 71-72.) Ms. Grenot-Scheyer, the Chair of the CTC, signed the letter. (*Id.* ¶¶ 3, 73.) The notices the CTC had sent Ms. Doe about the revocation hearing went to "a prior, incorrect address." (*Id.* ¶ 75.) Ms. Doe notified the CTC the notices went to the wrong address and requested a new hearing. (*Id.* ¶ 76.) The CTC informed Ms. Doe it could not grant a new hearing or take any remedial action until at least a year had

2

passed. (*Id.* ¶ 77.) Ms. Doe's current job requires teaching credentials. (*Id.* ¶ 78.)

## II. PROCEDURAL HISTORY

Ms. Doe filed her complaint on August 19, 2024. (Dkt. No. 1.) Counts I through III and V are brought against the School District. In Count IV, Ms. Doe alleges a Fourteenth Amendment due process violation against Ms. Grenot-Scheyer in her official capacity.

On September 10, 2024, Ms. Doe filed the pending motion for a preliminary injunction as to Count IV. (Dkt. No. 10.) She seeks "a preliminary injunction ordering the reinstatement of her credentials subject to a new hearing by the CTC, wherein the CTC shall provide proper email notice to Ms. Doe." (Dkt. No. 10 and 17-18.) Ms. Doe subsequently moved for entry of default against Ms. Grenot-Scheyer pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. No. 27.) After default was entered, Ms. Grenot-Scheyer moved to set it aside. (Dkt. No. 32.) The Court granted Ms. Grenot-Scheyer's request, and it granted Ms. Grenot-Scheyer's subsequent request for leave to file an opposition to the motion for a preliminary injunction. (Dkt. Nos. 33, 43.)

## III. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 911 (9th Cir. 2021) (emphasis in original). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted). The "[l]ikelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the absence of serious questions going to the merits." *Id.* (cleaned up).

### A. Success on the Merits

Count IV alleges Ms. Grenot-Scheyer is liable under section 1983 for failure to provide Plaintiff due process in revoking Plaintiff's teaching credentials. (Dkt. No. 1 ¶¶ 120-30.) A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Plaintiff contends, and Ms. Grenot-Scheyer concedes, "there has been a deprivation of [P]laintiff's property interest in her teaching credentials." (Dkt. No. 37-1 at 5.) *See Stivers v. Pierce*, 71 F.3d 732, 740 (9th Cir. 1995) (concluding plaintiffs had protected property interest in licenses as private investigator, private patrolman, and process server).

So, the question is whether there was a denial of adequate procedural protections. Ms. Grenot-Scheyer asserts due process was provided because, prior to revoking Plaintiff's credentials, the CTC sent notice to the mailing address Plaintiff provided to the CTC on June 16, 2014. (Dkt. No. 37-2 ¶ 4.) Specifically, the CTC sent four letters: (1) on November 3, 2023, an initial contact letter regarding potential adverse action, requesting a response by December 4, 2023; (2) on January 26, 2024, a notice of formal review; (3) on March 22, 2024, a notice the committee found probable cause to recommend the revocation of Plaintiff's teaching credentials; and (4) on June 28, 2024, notice the CTC revoked her credentials, effective July 28, 2024. (Dkt. No. 37-2 ¶¶ 5, 7, 9; 37-3; 37-4; 37-5; 37-6.) Plaintiff asserts due process required the CTC to use email service in addition to mail service.

"To determine whether [Plaintiff] received all the process that [s]he was 'due,' the court must weigh (1) Plaintiff's private property interest, (2) the risk of an erroneous deprivation of such interest through the procedures used, as well as the value of additional safeguards, and (3) the Government's interest in maintaining its procedures, including the burdens of additional procedural requirements." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976)). "This is not a bright-line test, but is flexible depending on the circumstances." *Id.*

4

### 1. Private Property Interest

As to the first factor, Plaintiff has a substantial private property interest in her credentials, which her current role requires. (Dkt. No. 1 ¶ 78.) *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("[T]he significance of the private interest in retaining employment cannot be gainsaid"). Ms. Grenot-Scheyer evidently concedes this point, as she does not address it in her opposition.

### 2. Risk of Erroneous Deprivation

The second factor also weighs in Plaintiff's favor. The value of the additional safeguard—in this case, email notice—is significant. It is not uncommon to change physical addresses while maintaining the same email address. The decisions approving class notice via email underscore the reliability of email as a means of communication. *See, e.g.*, *Brown v. DIRECTV, LLC*, No. CV 13-1170-DMG (EX), 2020 WL 4810994, at *1 (C.D. Cal. July 23, 2020); *see also* Fed. R. Civ. P. 23(c)(2)(B) (notice "may be by . . . electronic means"). So, email is a valuable additional safeguard. This is true notwithstanding the fact "it is the responsibility of the [credential] holder . . . to notify the Commission of any change in his or her address of record." *Id.* Cal. Code Regs. tit. 5, § 80310. While credential holders should comply with this regulation, the provision acknowledges the possibility credential holders will forget to do so; it provides the Committee, in its discretion, "may also send the notice to the last known address of the holder or applicant." *Id.*

Relatedly, the risk of erroneous deprivation without email notice is high—as this case demonstrates. The CTC revoked Plaintiff's credentials on the basis of allegations that were investigated and determined to be unfounded. Sending notice via email, too, increases the likelihood credential holders like Plaintiff will receive notice of the possible revocation and utilize the opportunities provided to present their side of the case, which is "of obvious value in reaching an accurate decision." *See Loudermill,* 470 U.S. at 543.

Ms. Grenot-Scheyer does not contest the value of notice by email. She instead emphasizes the CTC's compliance with the relevant regulation, which only requires notice by physical mail. Cal. Code Regs. tit. 5, § 80310 ("The notice . . . shall be sent to the address of record of the holder or applicant."). But in determining what process is due under the Fourteenth Amendment, "the

answer . . . is not to be found in" state law. *Loudermill,* 470 U.S. at 541. Rather, "the minimum procedural requirements are a matter of federal law," and "they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Id.* (cleaned up); *see also Grace v. Drake*, 832 F. Supp. 1399, 1403 (D. Haw. 1991) (concluding the plaintiff's reliance on a Hawaii statute was misplaced because "the amount of procedural due process to which a person is entitled is a constitutional question which must be resolved by federal, not state, law"), *aff'd,* 8 F.3d 26 (9th Cir. 1993).

### 3. Burden of Additional Requirement

The third factor—the Government's interest in maintaining its procedures, including the burdens of additional procedural requirements—also weighs in Plaintiff's favor. Sending an email is minimally burdensome. In fact, it is less burdensome than sending a physical letter, which requires printing the letter, addressing and stamping the envelope, and placing it for collection. Notably, Ms. Grenot-Scheyer does not refute Plaintiff's allegation the CTC had her email address. (Dkt. No. 1 ¶ 75 ("At all relevant times, the CTC had Ms. Doe's email address.").)

At oral argument, counsel for Ms. Grenot-Scheyer argued the CTC's computer system is not set up to send email but provided no evidence to support this claim. Meanwhile, Plaintiff provided evidence refuting this claim in the form of an email the CTC sent her counsel, indicating at least some staff members at the CTC use email. (Dkt. No. 44-1.)

In sum, considering the *Matthews* factors, Plaintiff has demonstrated a likelihood of success on the merits of her Count IV due process claim.

### B. Irreparable Injury

 "In cases alleging a constitutional violation, if a plaintiff "shows [s]he is likely to prevail on the merits, that showing usually demonstrates [s]he is suffering irreparable harm no matter how brief the violation." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). Here, in light of the preceding discussion, Plaintiff has demonstrated a likelihood of irreparable injury.

      Moreover, the Ninth Circuit has found irreparable injury when the plaintiff is unable to work in her chosen profession. *See Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1156 (9th Cir. 2011) (concluding the plaintiff "demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession"); *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023) ("loss of employment" constituted irreparable harm). That Plaintiff cannot pursue her chosen profession without credentials underscores the risk of irreparable injury.

      Ms. Grenot-Scheyer never addresses irreparable injury. Her contention that Plaintiff "did not need to file this action in federal court" and instead could have sought "judicial review in the California Superior Court" can be construed as an argument that Plaintiff could have avoided injury by seeking redress through other means. (Dkt. No. 37-1 at 9.) But exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under section 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."). So, Plaintiff has demonstrated a likelihood of irreparable injury.

### C.  Balance of Equities and Public Interest

      For the third and fourth factors, Plaintiff must establish the balance of equities tips in her favor and an injunction is in the public interest. "When the government is a party, these [] two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

      "[B]y establishing a likelihood that [the CTC's] policy violate[d] the U.S. Constitution, Plaintiff[] ha[s] also established that both the public interest and the balance of the equities favor a preliminary injunction." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). This is because "the public interest and the balance of the equities favor preventing the violation of a party's constitutional rights." *Id.* (cleaned up).

      Ms. Grenot-Scheyer does not explicitly address the third and fourth *Winter* factors. Her argument the "CTC lost power to order a consideration 30 days after the mailing of the decision to plaintiff" might be construed as an articulation of harm to the CTC. (Dkt. No. 37-1 at 9.) *See*

7

1  Cal. Gov. Code § 11521(a) ("[t]he power to order a reconsideration shall expire . . . on the date set
2  by the agency itself as the effective date of the decision"). While the agency's power to order
3  reconsideration may have expired on July 28, 2024, that statute does not implicate the Court's
4  authority to issue an injunction pursuant to section 1983.

5  In sum, a preliminary injunction is appropriate because Plaintiff has made a clear showing
6  on the four *Winter* factors. In particular, Plaintiff has established she is likely to succeed on the
7  merits and the balance of hardships tips in her favor: Plaintiff is without the credentials she needs
8  for her job, and the burden on the CTC to provide a new notice and hearing is minimal.

## IV.  BOND

At the hearing, counsel for Ms. Grenot-Scheyer requested a bond furnished by Plaintiff in an amount to pay for the cost of appealing the Court's order granting a preliminary injunction. "In setting the amount of a bond, district courts are generally afforded wide discretion . . . and the bond amount may be zero where there is no evidence that a party will suffer damages from the issuance of an injunction." *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1027 n.11 (N.D. Cal. 2003) (first citing *Gorbach v. Reno,* 219 F.3d 1087, 1092 (9th Cir.2000), then citing *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 733 (9th Cir.1999)). Here, Ms. Grenot-Scheyer has provided no evidence of injury and no legal authority to support issuance of a bond to provide for costs of appeal. So, the Court in its discretion DENIES Ms. Grenot-Scheyer's request.

## V.  MOTION RE: SEALING

Plaintiff moved to proceed under a pseudonym "because of the private nature of the issues before the Court, and the risks to [her] mental health." (Dkt. No. 9 at 15.) The Court granted her request. (Dkt. No. 22.)

"Respecting plaintiff's rights to proceed under pseudonym, [Ms. Grenot-Scheyer] moves to file the Declaration of Alexandru Ceachir and its supporting exhibits under seal so that the anonymity of plaintiff is not jeopardized, as these exhibits would otherwise reveal plaintiff's personal identifying information on the public record." (Dkt. No. 38 at 3.) Ms. Grenot-Scheyer adds that sealing is necessary because Education Code Section 44248 criminalizes unlawful disclosure of "information received at a commission or committee meeting or hearing or through

8

1  the investigation of a certified employee." (*Id.*)

2  "Due to the strong presumption for public access and the nature of the instant motion for a
3  preliminary injunction, [Ms. Grenot-Scheyer] must demonstrate compelling reasons to keep the
4  documents under seal." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1103 (9th Cir.
5  2016). She has not met this standard for the entirety of the documents. Exhibits A-1 through 4 are
6  letters the CTC sent Plaintiff. Ms. Grenot-Scheyer did not receive the letters at a committee or
7  commission meeting, and she did not obtain them through investigation into Plaintiff; the only
8  content implicated by California Education Code Section 44248 is the description of the
9  allegations against Ms. Doe. So, Plaintiff's name, address, and personal information, as well as
10 any description of the allegations against her, should remain confidential and sealed from the
11 public, but Ms. Grenot-Scheyer has not provided compelling reasons for sealing the documents in
12 full. So, the Court DENIES Ms. Grenot-Scheyer's request to seal the declaration at Docket. No.
13 37-2 and exhibits A-1 through A-4. She must refile redacted versions of the documents consistent
14 with this Order.

## CONCLUSION

16 For the reasons stated above, the Court GRANTS Plaintiff's motion for a preliminary
17 injunction. The Court preliminarily enjoins Ms. Grenot-Scheyer, and her agents, employees,
18 officers, and representatives, from maintaining their revocation of Plaintiff's teaching credentials
19 without granting a new hearing for which Plaintiff is provided email notice. In other words, they
20 shall reinstate Plaintiff's teaching credentials unless and until, following proper notice and an
21 opportunity to be heard, they decide revocation is warranted.

22 The Court sets a case management conference for January 30, 2025 at 1:30 p.m. via Zoom
23 video. A joint case management conference statement is due by January 23, 2025.

24 //
25 //
26 //
27 //
28 //

9

This Order disposes of Docket No. 10.

**IT IS SO ORDERED.**

Dated: November 15, 2024

JACQUELINE SCOTT CORLEY
United States District Judge